J-A12022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: Z.E.G. | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.J.K. | : | No. 34 WDA 2020 |

Appeal from the Decree Entered November 25, 2019
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  38 in Adoption 2019

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: K.N.G. | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.J.K. | : | No. 35 WDA 2020 |

Appeal from the Decree Entered November 25, 2019
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  38A in Adoption 2019

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED JUNE 10, 2020**

Appellant, T.J.K. ("Mother"), appeals from the decrees entered in the Erie County Court of Common Pleas, Orphans' Court, which granted the petition of C.G. ("Father") for involuntary termination of Mother's parental rights to Z.E.G. (born in January 2012) and K.N.G. (born in April 2009) ("Children").  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

The relevant facts and procedural history of this case are as follows. Mother and Father married in 2007 and separated in 2014. Prior to their separation, Mother and Father lived in Michigan with Children. After their separation, Father moved to Pennsylvania. At that time, Children resided primarily with Mother in Michigan. In April 2016, during a visit with Father in Pennsylvania, K.N.G. disclosed that she and Z.E.G. had been sexually abused by Mother's boyfriend, D.B. Michigan and Pennsylvania child protective services became involved, deemed the allegations of abuse "founded" after an investigation, and Father obtained primary physical custody of Children.

In 2017-2018, Mother and Father participated in extensive custody litigation in Jefferson County, Pennsylvania, initiated by maternal grandparents. After a custody trial, the court entered the following order dated April 16, 2018, and entered the next day:

> AND NOW, April 16, 2018, after a custody trial, IT IS HEREBY ORDERED AND DECREED that Plaintiffs' Petition for Grandparent Custody is DENIED.
>
> IT IS FURTHER ORDERED AND DECREED that Father…shall have full physical and legal custody of the minor children, there shall be no visitation granted to Mother until approved by counseling and therapy.
>
> Counseling shall occur as follows:
>
> 1. Mother and the Maternal Grandparents shall attend an evaluation and counseling from Project Point of Light or some other certified sex offender counseling program that counsels both perpetrators and victims. They shall do their evaluation and individual counseling until the children's counselors are approached to set up a therapeutic situation and Mother and her family can have contact with the

children. Mother, Maternal Grandparents and Maternal Aunt will need to complete this counseling.

2. The [c]ourt envisions that after individual counseling and accepting the abuse, that the entire family, paternal and maternal, will work through Parkside Services in Erie to work toward regular contact and visitation. In this case, because of Mother's prior conduct it may take years to occur.

3. Mother shall have NO CONTACT with [D.B.] and she will cooperate with the authorities in prosecuting him for criminal violations should the legal authorities file a case against him.

(Order, filed 4/17/18).

On January 8, 2019, Father filed petitions for involuntary termination of Mother's parental rights (one petition per child) in Jefferson County, under 23 Pa.C.S.A. § 2511(a)(1) and (b). Father alleged, *inter alia*, that since the entry of the custody order, Mother had not reached out to Children (through Father or Children's counselors) seeking to participate with Children in counseling pursuant to the terms of the order. Father claimed his new wife, E.S.G., was ready and willing to adopt Children, and that termination of Mother's parental rights would serve Children's best interests and permit E.S.G. to adopt them.[1]

Mother filed motions to dismiss and answers to the petitions on February 22, 2019. In the motions to dismiss, Mother claimed venue was improper in

---

[1] A petition to terminate a natural parent's parental rights, filed by one natural parent against the other, is cognizable only if an adoption of the child is foreseeable. **See** 23 Pa.C.S.A. § 2512(b) (stating petition for involuntary termination of parental rights filed by one natural parent against other natural parent must contain averment that petitioner will assume custody of child until such time as child is adopted).

- 3 -

Jefferson County, as Father and Children had been residing in Erie County since June 2017. In her answers, Mother insisted she had demonstrated a clear intent to defend and protect her parental claims to Children and had made every effort to comply with the terms of the April 2018 order. Mother maintained she tried to appeal the April 2018 order, but that appeal was dismissed in September 2018. Mother contended she had been seeking mental health treatment, including counseling from a certified sex offender counselor who works with perpetrators and victims. Mother averred she was also undergoing counseling for the trauma and injury she suffered as a result of losing custody and being separated from her children. Mother stressed that she was continuing to make all reasonable efforts to comply with the court's directives and to equip herself with the necessary therapy and training to reestablish a healthy relationship with Children.

Mother further emphasized that the April 2018 order did not designate a deadline in which Mother had to complete counseling. Mother said it was her intent to follow her counselor's advice regarding an appropriate time to attempt reunification with Children. Mother also highlighted that she had been consistent with her child support payments. Mother suggested her actions did not demonstrate a settled purpose of relinquishing her parental rights.

On or around February 28, 2019, the Jefferson County Court of Common Pleas transferred the case to the Erie County Court of Common Pleas, Orphans' Court. Father filed amended petitions for involuntary termination of Mother's

parental rights, on July 17, 2019, raising the same allegations set forth in the initial petitions and adding Section 2511(a)(2) as another ground for relief. Mother filed responses to the amended petitions on July 25, 2019.

The court held termination hearings on October 9, 2019 and November 21, 2019.[2] At the start of the termination hearing on October 9, 2019, the court took judicial notice of the findings and facts and conclusions of law of the Jefferson County Court of Common Pleas in the 2017-2018 custody action. Father then testified as the first witness, indicating Children have lived with him since April 2016. Father explained Children both have reactive attachment disorder, and Z.E.G. also has ADHD and low muscle tone. Father stated both Children have undergone and continue to undergo substantial therapy due to the sexual abuse they endured at the hands of Mother's paramour. Father interpreted the April 2018 order as requiring Mother to undergo sex offender treatment and then to reach out to Children's counselors to reestablish a connection with them. Father said Mother has not reached out to any of Children's counselors since the April 2018 order in an attempt to pursue reunification.

Father asserted that Children have expressed no interest or desire to have contact with Mother. Rather, Father insisted Children are fearful of

---

[2] Mother did not meet the income requirements for court-appointed counsel and did not retain private counsel, so she appeared *pro se* at the termination hearings.

having contact with Mother. Father said his wife, E.S.G., loves Children, treats them as her own, and wants to adopt Children. Aside from paying child support, Father maintained Mother has taken no overt act to parent Children. Father admitted he did not give Mother a list of Children's counselors, but he stated Mother did not contact Father for a list of Children's counselors.

Further, Father recounted that K.N.G. had disclosed the sexual abuse to him during a visit in April 2016. K.N.G. told Father that Mother's boyfriend licks her private parts. Father called Mother about the allegations and Mother initially said she had spoken to K.N.G. about that a year ago; but Mother subsequently denied having prior knowledge of the allegations. Father said the allegations of sexual abuse, and later allegations of physical abuse, against Mother's paramour were founded. (**See** N.T. Termination Hearing, 10/9/19, at 6-43).

Colleen Prittie, Children's blended case manager, testified that she works for the Achievement Center and coordinates family services. Ms. Prittie began working with K.N.G. in the fall of 2017 and with Z.E.G. in June 2018. Ms. Prittie said Mother did not contact her at any point. Ms. Prittie confirmed that Children fear Mother and do not want to have contact with her. Specifically, Ms. Prittie indicated Children do not feel Mother believes their allegations; Children are very angry with Mother and do not feel protected by her. Ms. Prittie also said Children wrote letters to the court and to Mother expressing their opinions because they did not want to testify in court.

Children gave the letters to their guardian *ad litem* ("GAL"). Ms. Prittie helped facilitate the process of Children writing their letters. (***See id.*** at 43-63).

Frances Tuck, a licensed clinical social worker, testified by phone that she worked with Children at the Achievement Center. Ms. Tuck worked with Z.E.G. for two years and with K.N.G. for a year and a half. Ms. Tuck conducted trauma focused play therapy with Children. In Ms. Tuck's opinion, Children's behaviors during play therapy supported their allegations of abuse. Z.E.G. acted out extremely violent scenarios in play therapy, while K.N.G. was more internal. Children both said they did not want contact with Mother and were afraid to have contact with Mother. Ms. Tuck confirmed it is common for abused children not to exhibit behavioral problems until after they leave the abusive household and feel they are in a safer environment. (***Id.*** at 64-78). At the conclusion of Ms. Tuck's testimony, Father rested his case.

Mother called her sister, J.R., as her first witness. J.R. testified that she has never seen Children show fear of Mother. J.R. expressed doubts that D.B. actually abused Children. J.R. suggested Father and his wife were playing a game of "keep away" with Children. J.R. said Father has made every attempt to shut out Mother and has blocked her access to Children. J.R. also claimed Father gave misleading information to Children's therapists. (***Id.*** at 79-91).

In lieu of presenting a narrative of her testimony, Mother submitted a written affidavit, which the court admitted as an exhibit. (***Id.*** at 93). Upon cross-examination by Father's counsel, Mother stated she underwent four

evaluations by her treating therapist. Mother admitted she did not produce the results of those evaluations to Father or his counsel. Mother also conceded that she did not contact Father for the names of Children's counselors. Mother indicated she was unsure if the sexual abuse of Children actually happened because she has not spoken to Children about it since they made the allegations. (*Id.* at 95-105). Following Mother's testimony, the court adjourned for the day.

The termination hearing continued on November 21, 2019. Dr. Julie Davis, Ph.D., Mother's psychologist, testified by phone[3] that Dr. Davis had been treating Mother continuously since August 2017. Dr. Davis explained Mother underwent multiple assessments and evaluations, and she discussed the results of those tests. Dr. Davis conceded that Mother did not submit to the evaluations until after Father filed the termination petitions in this case. Dr. Davis said she primarily works with sex abuse victims and works with sex offenders peripherally. Dr. Davis indicated that Mother has not denied Children's abuse; rather, Mother denied knowledge of whether Children were abused. Dr. Davis testified that Mother claimed to have removed her paramour from the home after the allegations. (*See* N.T. Termination Hearing, 11/21/19, at 3-20).

Mother's last witness was Father's wife, E.S.G. E.S.G. testified that she

_____

[3] Dr. Davis testified as a fact witness, not an expert witness.

was not trying to replace Mother or shut Mother out of Children's lives.  Rather, E.S.G. was merely trying to "pick up the pieces" and act in Children's best interests.  E.S.G. maintained that she had tried to urge Children to call Mother more frequently when a prior order for supervised phone calls was in effect, but Children did not want to speak to Mother.  (*See id.* at 21-31).

After testimony concluded, the GAL sought to introduce letters from Children expressing their opinions in the case.  Mother objected to admission of the letters, claiming she had no way to confirm whether Children actually wrote the letters and whether Children wrote the letters of their own volition. The GAL represented to the court that the letters expressed Children's wish to be adopted by E.S.G.  The court admitted the letters and told Mother she could raise her concerns again in closing arguments.  The GAL then opined that it was in Children's best interests to terminate Mother's parental rights.  The GAL stated Children are severely traumatized and damaged by the sexual assault and Mother's refusal to believe their allegations or protect them, and more litigation would cause further damage.

On November 25, 2019, the court entered decrees granting Father's petitions for involuntary termination of Mother's parental rights under Section 2511(a)(1) and (b).  Mother timely filed notices of appeal on December 23, 2019, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).  This Court has consolidated the appeals.

Mother raises the following issues for our review:[4]

> WHETHER THE TRIAL COURT ERRED IN TERMINATING THE PARENTAL RIGHTS OF [MOTHER] WHERE THE RECORD DOES NOT DEMONSTRATE CLEAR AND CONVINCING EVIDENCE IN SUPPORT OF TERMINATION PURSUANT TO 23 PA.C.S.A. § 2511(A)(1)?
>
> WHETHER THE TRIAL COURT ERRED IN TERMINATING THE PARENTAL RIGHTS OF [MOTHER] WHERE THE RECORD DOES NOT DEMONSTRATE CLEAR AND CONVINCING EVIDENCE PURSUANT TO 23 PA.C.S.A. § 2511(A)(2)?
>
> WHETHER THE TRIAL COURT ERRED IN TERMINATING [MOTHER'S] PARENTAL RIGHTS WHERE THE COURT'S RELIANCE ON THE TESTIMONY OF THE [GAL] WAS IMPROPER?
>
> DID THE TRIAL COURT ERR IN CONDUCTING A BEST INTEREST ANALYSIS UNDER SECTION 2511(B) OF THE ADOPTION ACT WHERE THE EVIDENCE ON THE RECORD DID NOT SUPPORT A FINDING THAT THE CHILDREN'S DEVELOPMENTAL, PHYSICAL AND EMOTIONAL NEEDS WOULD BE SECURED BY TERMINATING MOTHER'S PARENTAL RIGHTS?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION BY NOT ALLOWING [MOTHER] TO INTRODUCE EXHIBITS TO SUPPLEMENT HER SWORN AFFIDAVIT OF TESTIMONY?

(Mother's Brief at 12-14).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

_____

[4] Mother has retained private counsel for this appeal.

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972

A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d

1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165

(2008)).

For purposes of disposition, we combine Mother's first and second issues. Mother argues Father failed to satisfy his burden to prove termination of her parental rights was proper under Section 2511(a)(1). Mother asserts she was actively engaged in counseling with Dr. Davis, has been continuously paying child support, and was actively involved in the underlying custody action, in the six months preceding the filing of the termination petitions. Mother claims she adhered to the court's April 2018 order by undergoing counseling that focused on Children's abuse. Mother insists she demonstrated an effort to provide for Children despite the many obstacles in her way. Mother maintains she was ignored and blocked by Father any time she tried to contact Children's counselors. Mother submits the record does not evidence a settled purpose of relinquishing her parental claim to Children or a refusal or failure to perform parental duties.

Additionally, Mother contends Father failed to satisfy his burden to prove termination of her parental rights was proper under Section 2511(a)(2). Mother suggests she substantially complied with the April 2018 order, as evidenced by her treatment with Dr. Davis. Mother avers the court failed to consider the various evaluations she underwent with Dr. Davis. Mother admits those evaluations took place after Father filed the termination petitions, but she emphasizes the court was not precluded from considering those efforts under a Section 2511(a)(2) analysis. Given Mother's completion of a sex offender evaluation and ongoing treatment with Dr. Davis, Mother concludes

the record does did not support termination of her parental rights under Section 2511(a)(2). We disagree.

Father sought involuntary termination of Mother's parental rights to Children on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), and (b). "Parental rights may be

involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

Under Section 2511(a)(1):

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for …her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of …her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

Instantly, the court decided Father met his burden to establish termination of Mother's parental rights under Section 2511(a)(1), explaining:

> The evidence in support of Father's contention that Mother has refused or failed to perform parental duties under section 2511(a)(1) is fairly straightforward. Father presented clear and convincing evidence that Mother has had no contact with the Children since 2017, and other than

paying child support, she has performed no parental duties, even after the Custody Order was entered in 2018 that gave her a means to do so.[13]

> [13] To the extent Mother argues that pursuit of custody litigation is, in and of itself, performance of parental duties under the facts of this case, that argument is defeated by her failure to diligently follow the resulting Custody Order.

\*    \*    \*

Mother's testimony [as set forth in her affidavit] reveals three main excuses for her failure to initiate contact with the Children's counselors under paragraph 1 of the Custody Order.  First she blames Father for not identifying the counselors, which…the court did not find persuasive given Mother made no effort whatsoever to seek out that information.  It is well settled that a parent must utilize all available resources to preserve the parental relationship and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.  [*See In re B., N.M., supra*].  This she did not do.

Her second explanation is that she was delayed in following the Custody Order while the Superior Court appeal was pending.  However, the appeal did not stay the Custody Order, and she provided no other reason why she could not follow the Custody Order during the pendency of the appeal.  In fact, she demonstrated the opposite conclusion by arguing that her continued work with Dr. Davis after the Custody Trial, including during the pendency of the appeal is evidence that she was attempting to follow the Custody Order at that time.

Her third explanation is that the Custody Order did not provide a deadline by which she was required to act.  In this respect Mother is correct, but, in this court's view, that does not relieve her of her obligation to begin performing parental duties at the earliest possible time.  Mother testified that she was busy with her own therapy and was not yet in a place in her life to advance to therapeutic contact with the Children.  However, this argument did not satisfy the court.

> Mother testified that she has been in counseling with Dr. Davis since 2017. She also testified to numerous times throughout the history of this case where she was given specific custody rights, for example in the Michigan custody orders, but never acted diligently to enforce those rights. Throughout the history of this case, as evidenced by her testimony before court, statements in her Affidavit and Response to the [termination] petition[s], and in the Findings from the Custody Trial, Mother has demonstrated a pattern of avoidance, followed by blaming others for the natural consequences of her own failures to work diligently to overcome the obstacles she asserts were placed in her path of maintaining the parent-child relationship.

(Trial Court Opinion, filed January 22, 2020, at 18-20).

Additionally, the court found incredible Mother's testimony concerning her difficulties in contacting Children's counselors. The trial court noted that Mother was present at the custody trial in Jefferson County, at which Ms. Prittie (Children's blended case manager) had testified, and nothing prevented Mother from reaching out to her to explore reunification counseling with Children's counselors. Further, the court explained that Mother's testimony, "when considered as a whole, reflected that she has made no progress toward understanding how her continuing focus on the veracity of the Children's abuse allegations, as opposed to accepting the Children's belief that they were abused, has been the primary cause of the Children's alienation from her." (*Id.* at 14-15).

We agree with the court's analysis. *See In re Z.P., supra*. The April 2018 custody order made clear that Mother needed to accept that the abuse occurred. The order also provided a roadmap for Mother to rebuild a

relationship with Children. At the time of the 2019 termination hearings, Mother was still unable to come to grips with the abuse, even though child protective services had determined Children's allegations were founded, and Children's counselors testified that Children's behaviors were consistent with being abused.

Additionally, Mother admitted that she made no effort to contact Father or Children's counselors at any point since entry of the April 2018 order. Instead, Mother blamed Father for not reaching out to her with more information. Aside from paying child support, Mother made no effort to perform any parental duties in the six months prior to the filing of the termination petitions. The record supports the court's termination decision under Section 2511(a)(1).[5] Therefore, Mother's first and second issues merit no relief.

In her third issue, Mother argues the court's reliance on the GAL's recommendations was improper. Mother asserts the GAL did not fulfill the obligations outlined in Section 6311 of the Juvenile Act, because she did not

---

[5] In its Rule 1925(a) opinion, the court stated termination of Mother's parental rights was also proper under Section 2511(a)(2) for the same reasons the court set forth supporting termination under subsection (a)(1). (*See* Trial Court Opinion at 20 n.14). Nevertheless, in its decrees terminating Mother's parental rights, the court did not mention Section 2511(a)(2). In any event, because Father only needed to prove termination was proper under one subsection of Section 2511(a), in conjunction with Section 2511(b), we need not consider Mother's argument under Section 2511(a)(2). *In re Z.P., supra* at 1117.

interview Mother during the course of the proceedings. Mother submits that Section 6311 requires a GAL to interview the parents in dependency proceedings. Mother admits there is no statute delineating a GAL's powers and duties with respect to private termination proceedings. Nevertheless, Mother suggests the powers and duties of a GAL outlined in the Juvenile Act should be construed to require a GAL in a private termination proceeding to interview the parents prior to making a recommendation regarding whether termination serves the best interests of the children.

Mother contends the GAL spoke with Mother for only a moment prior to the termination hearing, when the GAL asked Mother if she would be willing to voluntarily relinquish her parental rights. Mother emphasizes that the GAL asked her only two questions on cross-examination. Mother insists a GAL is appointed to conduct a thorough investigation of the circumstances surrounding a termination proceeding, which cannot be properly executed if a GAL interviews only a few interested parties. Mother also claims the court improperly allowed the GAL to submit unauthenticated letters from Children, in violation of Pa.R.E. 901. We disagree.

Preliminarily, as a general rule, a Rule 1925 statement of errors complained of on appeal must concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues; issues not included in the Rule 1925 concise statement are waived on appeal. *In re A.B.*, 63 A.3d 345 (Pa.Super. 2013).

This Court has considered the question of what constitutes a sufficient [concise] statement on many occasions, and it is well-established that [an a]ppellant's concise statement must properly specify the error to be addressed on appeal. The [concise] statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal. Further, this Court may find waiver where a concise statement is too vague. When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. A [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all.

*Id.* at 350 (internal citations omitted) (holding mother waived claims on appeal by failing to specify issues complained of on appeal in her concise statement).

Instantly, Mother raised 19 claims of error in her Rule 1925(a)(2)(i) statement. Significantly, however, Mother did not include a challenge to the GAL's alleged failure to fulfill her duty to interview Mother under Section 6311 of the Juvenile Act. As a result of Mother's failure to specify this claim of error in her concise statement, the trial court did not address it in the court's Rule 1925(a) opinion. Consequently, we deem this particular claim of error waived on appeal.[6] *See id.*

_____

[6] In her concise statement at allegation #10, Mother raised the following issue: "Whether the [c]ourt [erred] in finding that based on the opinion of the GAL, who had never had any contact with the Mother, her therapists or the [Children's] current therapists,…that the bond between Mother and [Children] had been properly examined pursuant to 23 Pa.C.S.A. [§] 2[5]11(b), and correctly found that the best interests of [Children] were served by clearing a path to permanency through the proposed step parent adoption by

Mother did, however, preserve her claim challenging the GAL's presentation of allegedly unauthenticated letters from Children, in violation of Pa.R.E. 901 (stating: "Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is").[7]

"[T]he decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the orphans' court overrides or misapplies the law." *In re A.J.R.-H.*, 647 Pa. 256, 273, 188 A.3d 1157, 1166 (2018) (internal citations omitted).

In *In re B.J.Z.*, 207 A.3d 914 (Pa.Super. 2019), the appellant/father claimed the trial court erred by allowing statements made by the two oldest

_____

[Children's] step mother." (Rule 1925(a)(2)(i) statement, filed 12/23/19, at 3). To the extent this claim purported to encompass Mother's current challenge to the GAL's alleged failure to fulfill her duties under the law, we deem it too vague to have preserved Mother's contention on appeal. *See In re A.B., supra*. Rather, the issue as framed in Mother's concise statement aligns more closely with Mother's fourth issue on appeal, challenging the court's Section 2511(b) analysis.

[7] Mother also suggests the GAL violated Rule of Professional Conduct 3.7 by submitting the "unauthenticated letters." Mother did not raise this particular claim in her concise statement and does not adequately develop this argument on appeal, so we deem it waived. *See In re A.B., supra*. *See also In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa.Super. 2017) (stating it is well-settled that this Court will not review claim unless it is developed in argument section of appellant's brief and supported by citations to relevant authority; failure to do so constitutes waiver of issue on appeal).

children into evidence by way of the children's legal-interests attorney. The appellant claimed the court had essentially relied on inadmissible hearsay, because the appellant was unable to question the children in court. In its Rule 1925(a) opinion, the trial court relied on the Supreme Court's decision in *In re Adoption of L.B.M*, 639 Pa. 428, 161 A.3d 172 (2017) (holding court must appoint legal-interests counsel for child in contested termination proceeding to represent child's "legal interest" which is synonymous with "preferred outcome"), to support its decision that statements from a child's legal-interests counsel regarding the child's preferred outcome in the case do not constitute inadmissible hearsay. *In re B.J.Z., supra* at 919. The trial court stated: "We do not believe that the Supreme Court of Pennsylvania would mandate that children in these hearings must testify under the rationale that it would otherwise be permitting inadmissible hearsay. Such a decision would likely cause additional distress and long-lasting, if not permanent, emotional impact on children." *Id.*

This Court agreed with the trial court's analysis, and added that "testimony as to what a child tells other people is admissible in order to establish that child's mental state at the time he or she made the comment." *Id.* (internal citations omitted). Consequently, this Court held that the trial court did not err in allowing the children's legal-interests counsel to provide the court with information regarding the children's position on termination of their father's parental rights. *Id.* at 920.

Instantly, the trial court explained:

> The GAL presented GAL Exhibits 1 and 2, which are a collection of hand written letters by or on behalf of the Children offered in lieu of their testimony in court. Both letters express the Children's hurt, anger, and rejection of Mother in favor of Father and [E.S.G.] The letters were considered by the court to the extent they fulfilled the GAL's obligation as attorney for the Children to represent the Children's preferences in this matter, and also for the purpose of showing the Children's current state of mind. However, they were not considered as proof of the truth of any of the factual matters asserted therein.

(Trial Court Opinion at 17).

We see no abuse of discretion in the court's admission of Children's letters under the facts of this case. *See In re A.J.R.-H., supra*. The GAL, who also served as Children's legal-interests counsel,[8] was entitled to present Children's preferred outcome in this case. *See L.B.M., supra*. The court considered the letters solely for the purpose of showing Children's preferred outcome. While *In re B.J.Z.* involved a hearsay challenge, we find this Court's reasoning in that case instructive here, and conclude that the court's admission of Children's letters expressing their preferred outcome did not violate Rule 901. *See* Pa.R.E. 901; *In re B.J.Z., supra*.

_____

[8] The trial court did not appoint separate legal-interests counsel for Children and instead permitted the GAL to represent both Children's best and legal interests. Mother does not challenge the dual appointment on appeal. *See In re Adoption of K.M.G.*, 219 A.3d 662 (Pa.Super. 2019) (*en banc*), *appeal granted in part*, ___ Pa. ___, 221 A.3d 649 (2019) (holding Superior Court does not have authority to review *sua sponte* whether conflict existed between counsel's representation and child's stated preference in involuntary termination of parental rights proceeding).

Further, Ms. Prittie testified about Children's letters and stated that she had helped to facilitate the letter-writing process. Notably, after the GAL sought to admit Children's letters, Mother did not attempt to re-call Ms. Prittie for additional cross-examination related to the letter-writing process. In any event, even if the court erred by admitting Children's letters, the record does not indicate that such error would have contributed to the court's decision to terminate Mother's parental rights, where Father, Ms. Prittie, Ms. Tuck, and the GAL confirmed that Children's preferred outcome in the case was to remain with Father and E.S.G. and to terminate Mother's parental rights. **Compare** **In re A.J.R.-H., supra** (explaining that where erroneous evidentiary ruling could potentially have affected decision to terminate parent's rights, error is not harmless and parent is entitled to new hearing and decision). Thus, Mother's third issue on appeal merits no relief.

In her fourth issue, Mother admits her bond with Children is minimal. Mother asserts she lacks a significant bond with Children because of the various prohibitions by the court on her contact with them. Mother claims the court failed to consider her bond with Children prior to 2016, when Mother was the primary caretaker of Children. Mother concludes the court's termination decision under Section 2511(b) was improper. We disagree.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. **In re C.P.**, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability

are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond."

*Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have …her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a

> genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert herself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of …her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of …her child is converted, upon the failure to fulfill …her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, the court granted Father's petition for involuntary termination of Mother's parental rights under Section 2511(b), explaining:

> Here, the totality of the evidence supports the conclusion that whatever bond existed between Mother and Children in 2016, it has been severed from the Children's perspective. Given the time that has elapsed since Mother's last contact with the Children, and the consistent and unequivocal testimony from every witness having contact with the Children, including every professional witness, that the Children…are firmly resistant to contact with Mother; and given the corroborating letters produced by the Children as to their present state of mind, and the fact that all but

- 25 -

> Mother agree that the Children would not be harmed by terminating Mother's parental rights and their best interests would be served by bringing closure to this matter and facilitating permanency through adoption, this court finds that Father has satisfied his burden under section 2511(b) that termination of Mother's parental rights is in the best interests of the Children.
>
> Thus, even though the court believes Mother sincerely loves the Children and hopes to one day be capable of parenting them, the court cannot and will not subordinate indefinitely the Children's need for permanence and stability to a parent's claims of progress and hope for the future.

(Trial Court Opinion at 21-22) (internal citation and quotation marks omitted). Contrary to Mother's assertion, the record shows the court considered Mother's bond with Children prior to 2016, but determined any bond had been severed. The record supports the court's sound reasoning and we see no reason to disturb the court's termination decision under Section 2511(b). **See In re Z.P., supra**.

In her fifth and final issue, Mother argues she submitted an extensive list of proposed exhibits in this case, which the court excluded as irrelevant. Mother asserts the court should have allowed her to introduce her proposed exhibits to supplement her testimony.[9] Mother claims the court should not have mechanically applied the six-month lookback period, and was required to consider the "whole case." Mother insists her proposed exhibits would have

---

[9] Mother sought to admit 25 exhibits, including custody orders from the earlier proceedings in Michigan and Jefferson County and child protective services reports.

bolstered the statements Mother made in her affidavit. Mother concludes the court's refusal to admit her exhibits constitutes reversible error. We disagree.

Instantly, Mother framed this claim in her concise statement as follows: "Whether the trial court erred as a matter of law by refusing to permit [Mother] from concluding her testimony." (Rule 1925(a)(2)(i) statement at 3). Mother did not mention the court's exclusion of any particular exhibits Mother allegedly sought to admit or in what way the court prevented her from "concluding her testimony," which Mother had presented through an affidavit. As such, we deem Mother's fifth issue waived for vagueness in her concise statement. *See In re A.B., supra*.

Further, the court acknowledged that "the full history of the case was recently litigated between the parties in the Custody Trial in Jefferson County, resulting in the detailed Findings from that proceeding. Thus, the court did not deem it necessary to re-litigate the entire case history at the [termination] hearing." (Trial Court Opinion at 18). Indeed, at the beginning of the termination hearing on October 9, 2019, the court took judicial notice of the 36-page opinion by the Jefferson County Court of Common Pleas, which the court authored in support of its April 16, 2018 order. Thus, even if Mother had preserved this issue, we would still conclude the issue merits no relief, as the trial court was certainly aware of the "whole story" involving the parties. Accordingly, we affirm.

Decrees affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/10/2020